TOM BRADSTREET, APPELLEE, V. GRAND ISLAND BANKING
COMPANY, APPELLANT.

FILED JUNE 13, 1911. No. 16,486.

1. **Trial:** MOTION FOR VERDICT: WAIVER. Where, in a jury trial, a defendant, when plaintiff rests, moves for a verdict in his favor, and upon the overruling of such motion, without protest, proceeds with the trial and introduces evidence in support of the defenses set up in his answer, he thereby waives the right to assign error in the ruling upon such motion.

2. ——: INSTRUCTIONS. In the trial of a case to a jury, it is not error to refuse instructions requested by the parties, when the substance thereof is contained in the instructions given by the court on its own motion.

3. ——: ——: EXCEPTIONS. Instructions will not be reviewed by this court where no exceptions were taken by the party complaining until the filing of a motion for a new trial.

4. **Evidence:** SECONDARY EVIDENCE. On the question of the foundation required for the introduction of secondary evidence of the contents of a lost instrument, a wide discretion is left to the trial court. *Hapgood Plow Co. v. Martin,* 16 Neb. 27.

5. ——: ——. And where a copy of a lost telegram is prepared by the telegraph company, and the party who received the original thereof testifies that it is a true and correct copy, and that he delivered such original telegram to the adverse party, who upon demand and also upon the trial denies that he had ever received such original, it is not error to receive such copy in evidence. *Whitney v. State,* 53 Neb. 287.

6. **Appeal:** CONFLICTING EVIDENCE. A verdict on conflicting evidence, approved by the trial court, will not ordinarily be disturbed in the appellate court.

APPEAL from the district court for Hall county: JAMES R. HANNA, JUDGE. *Affirmed.*

*Charles G. Ryan,* for appellant.

*Harrison & Prince, contra.*

FAWCETT, J.

The petition alleges that on and long prior to September 26, 1906, plaintiff had an open account with the defendant bank as a depositor; that on that date one James McMillan drew the following draft: "Grand Junction, Colo., 9-26 1906. Tom Bradstreet: Pay to the order of Grand Valley Nat. Bank $330.00-100, three hundred thirty dollars, value received and charged to account of J. A. McMillan. To Grand Island Banking Co., Grand Island, Neb;" that plaintiff never authorized McMillan to make the draft; that said draft came into the possession of defendant some time between September 26 and October 2, 1906, the exact date being unknown to plaintiff; that defendant claims to have paid said draft on October 2, but whether cashed or paid by defendant plaintiff has no knowledge; that defendant wrongfully, illegally and without any authority whatever charged the amount of said draft to the account of plaintiff; that before the time when defendant claims to have paid the draft, and on or about September 28, plaintiff verbally notified the bank not to pay the same; that plaintiff did not accept said draft or agree to pay the same, or at any time authorize same to be paid out of his deposits or charged to his account; that plaintiff did not discover that the amount of the draft had been charged to his account until on or about November 3, 1906, when it was returned to him as a voucher with checks which had been charged to him by defendant, and that immediately upon the discovery thereof he demanded of defendant that it correct said account, and has repeatedly demanded of defendant the sum charged against his account, which demand has been refused; that the account between plaintiff and defendant has been fully settled, except said sum of $330, which defendant still holds, and that it is therefore now indebted to plaintiff in said sum; that on July 5, 1907, he drew a check upon defendant for the amount of the draft, and payment thereof was refused.

The answer admits the dealings between the parties as

banker and depositor; admits the drawing of the draft by McMillan; and alleges that the draft was in due course of business received by defendant on or after October 2, 1906; denies that the draft was paid without authority or instruction from plaintiff; and alleges the fact to be that plaintiff instructed the defendant to pay the draft on its arrival, and, following such instruction and authority of plaintiff, defendant did, on October 2, pay the draft; and denies each and every other allegation in plaintiff's petition.

As a second ground of defense, it is alleged that McMillan was in the employ of and purchased horses for plaintiff in the west during the summer of 1906; that the draft in question was drawn by McMillan to pay for 19 particular horses which plaintiff received; that plaintiff also recovered $200 from the Union Pacific Railway Company as damages for the negligent handling of said horses in course of shipment, and in said action claimed that he was the owner of such horses; by reason of all which defendant claims that plaintiff is estopped to deny the authority of McMillan to draw the draft or to repudiate the authority of defendant to pay the same.

As a third defense, it is alleged that on or about October 11, 1906, plaintiff's account was duly balanced, and the book, showing said draft charged to his account, was, together with other checks and vouchers of plaintiff, given to plaintiff, and that he has ever since said time had the draft in his possession and made no objections or complaints or offer to return said draft until the month of June, 1907; that plaintiff continued thereafter to deposit money in defendant bank and check upon the same, and paid defendant large sums of money upon notes and other forms of indebtedness, which was all done with full knowledge that the draft in controversy had been charged to his account; that on January 15, 1907, a final and complete settlement of all accounts between the parties was had, which adjustment included the draft in controversy, and that plaintiff then paid defendant all of his indebtedness and received his final balances on his account.

For a fourth defense, it is alleged that plaintiff, with a full knowledge of all the matters, and while having the draft in his possession, adjusted and settled his accounts with McMillan and included in said adjustment the amount of the draft; that at that time McMillan was responsible and was doing business in Nebraska and owned property therein; that after such settlement with plaintiff, and while plaintiff had the draft in his possession, and before he had made complaint to defendant, McMillan closed up his business in Nebraska and left for parts unknown to defendant; that defendant, relying upon the authority of plaintiff to pay the draft, was deprived of all opportunity to recover the same from or to make any adjustment thereof with McMillan; that defendant is informed and believes that plaintiff and McMillan are in collusion for the purpose of cheating and defrauding defendant, and that this action is brought in consummation of such plan; that by reason of his acts, laches, neglect and delay, and by reason of the acceptance and retention of the draft and the receipt of the benefits therefrom, plaintiff is now estopped to deny defendant's authority to pay the draft.

The reply traverses the allegations of the answer; denies that plaintiff owned the horses; admits the institution of the suit against the railroad company and settlement of the same; alleges that the action was commenced by the attorneys of McMillan and conducted in plaintiff's name only for the reason that the horses were consigned to him as a commission salesman and that he was present and could maintain said suit, while McMillan was absent; alleges that the pass book was balanced some time during the month of November; admits that the draft was returned to him, but alleges that he did not examine his vouchers immediately; that some time later, the exact date being to him unknown (but which date is fixed by his testimony as some time in November), he discovered that the draft had been charged to him, and immediately took the same to the paying teller of defendant bank, who had charge of pass books and vouchers for defendant, protested

41

against the same and demanded repayment of the money; that the teller requested plaintiff to give him time to straighten out the matter, stating that it would make him, the teller, trouble in the bank in the event the same was brought to the notice of the cashier; that he admitted he had made an error in paying the draft and charging the same to account of plaintiff, and that the delay in final pressing for payment was occasioned by the repeated requests of the teller for further time to enable him to try to get the matter straightened out with either McMillan or the Grand Valley National Bank. There was a trial to the court and a jury and a verdict for plaintiff for the full amount of the draft, without interest, upon which judgment was rendered, and defendant appeals.

Upon the trial, when plaintiff rested, defendant moved for a directed verdict in its favor, which motion was overruled, and the first error complained of is this ruling of the court. When defendant's motion was overruled, it proceeded without protest and introduced evidence in support of the allegations contained in its answer. We think this is a waiver of any right to now insist that the court erred in the ruling referred to.

The second error complained of is the refusal of instructions 1 and 2 tendered by defendant. Both of these instructions are covered by No. 14, given by the court on its own motion; hence, it was not error to refuse them.

By assignments 4, 5 and 6 it is urged that there was error in giving instructions 12, 14 and 15, given by the court on its own motion; but, as no exceptions were taken to the giving of these or any other of the instructions given by the court they cannot now be reviewed.

By the eighth assignment it is urged that the court erred in admitting in evidence a copy of a telegram, marked "Exhibit F," for the reason that there was no identification of this message, as being a copy of the original, "by any one." Plaintiff testified that, when he received the original telegram, he pinned it to a letter which he had received from McMillan and took the

same to defendant bank, where he had an interview with one of the bank officials with reference thereto; that he offered to leave the letter and telegram with the bank, but the bank official told him that it would not be necessary to leave the letter, and removed the pin and handed plaintiff the letter and retained the telegram; that thereafter, when the bank officials denied ever having received the telegram, he went to the telegraph office and obtained the copy, "Exhibit F," and that exhibit F was a true copy of the original telegram which he claims to have left with defendant. Having testified that he had left his original with defendant, and the officers of defendant claiming that they had made a search for such a telegram, but had been unable to find it, and had never received it, it was not error on the part of the court to admit the copy. The copy did not require proof by any official of the telegraph company that it was a true copy. The testimony of plaintiff upon that point was sufficient.

The other assignments, of which there are several, all relate to questions of fact in relation to the various matters pleaded. Upon all of these questions there is a direct conflict in the evidence. The jury were specially instructed as to each of the three affirmative defenses interposed. The case was submitted to the jury upon instructions to which defendant took no exceptions.

The evidence is sufficient to sustain a verdict either way. The court and jury saw the witnesses upon the stand, heard their testimony, and the jury by their verdict resolved all of these disputed questions in favor of the plaintiff. This verdict received the approval of the trial court. Under such circumstances, it is well settled that the supreme court will not interfere.

Finding no reversible error in the record, the judgment of the district court is

AFFIRMED.