756 F.2d 663
 40 UCC Rep.Serv. 973
 W.B. FARMS, a Colorado Partnership, and Robert D. Walker and
Ronald Ball, d/b/a W.B. Farms, Appellees and
Cross-Appellants,
v.
FREMONT NATIONAL BANK AND TRUST COMPANY, a national banking
corporation, Appellant and Cross-Appellee.
 Nos. 84-1442, 84-1480.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 16, 1985.
Decided March 7, 1985.
Rehearing Denied April 9, 1985.
 
 Lawrence Yost, Fremont, Neb., for appellant and cross-appellee.
 Allen J. Kincaid, Brush, Colo., for appellees and cross-appellants.
 Before ARNOLD, FAGG and BOWMAN, Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 W.B. Farms brought this action for breach of an oral agreement it says it made with Fremont National Bank & Trust Co. It contends that Fremont National Bank agreed to pay a check made payable to W.B. Farms whenever sufficient funds came into the account of the drawer. Jurisdiction is based on diversity of citizenship, and Nebraska law governs. Fremont appeals from a judgment entered on a jury verdict against it. Three principal questions are presented. The first question is whether an oral agreement by a drawee bank to pay a check whenever sufficient funds come into the account of the drawer is valid and enforceable. The second question is whether this record contains sufficient evidence to justify submitting to the jury the question whether any agreement was made. The third question is whether sufficient evidence exists of an agreement by Fremont to pay the check whenever sufficient funds came in to cover it. We hold that the evidence was sufficient in both respects and that the oral agreement is valid and enforceable. The judgment of the District Court[1] will therefore be affirmed.
 
 I.
 
 2
 This case arises out of a sale of cattle by W.B. Farms to Keith Mumma. In payment for the cattle, Mumma issued to W.B. Farms a check for $31,358.50 drawn on the Fremont National Bank & Trust Co. of Fremont, Nebraska, in which Mumma had an account. W.B. Farms entrusted the check to the Farmers State Bank of Brush, Colorado, for collection. The head teller of the Farmers State Bank telephoned the head teller of Fremont, and, according to the teller of the Farmers State Bank, secured an agreement that Fremont would pay the check whenever sufficient funds came into Mumma's account. The Farmers State Bank then sent the check to Fremont. On November 15, 1979, there was enough money in Mumma's account to pay the check, but Fremont did not pay it. The account was later exhausted by other charges, and Mumma went bankrupt. The plaintiff W.B. Farms now looks to Fremont for payment of the check, claiming the bank's failure to pay the check violated the oral agreement it made with W.B. Farms through the Farmers State Bank.
 
 II.
 A.
 
 3
 A check is a bill of exchange, drawn on a bank, and payable on demand. Checks represent three-cornered transactions. The person who signs the check, then delivering it to someone else in payment for goods or services, is known as the drawer, here Keith Mumma. The drawee of the check is the bank to which it is directed, in which, presumably, the drawer has an account. The third party to the transaction is the payee, the person to whose order the check is made payable, here W.B. Farms. Checks are not instant assignments of the drawer's funds to the payee. In fact, drawers have no money in banks. Only bankers have money in banks. Drawers have choses in action against banks. A bank's failure to pay a check, therefore, may be a breach of its contract of deposit with the drawer, but it is neither a breach of contract nor a tort actionable at the instance of the payee. To put it another way, drawee banks are generally not liable to payees on checks. To this rule there is an exception, as one might expect: under Neb.Rev.Stat. (U.C.C.) Sec. 3-409(1) & Sec. 3-410(1) (Reissue 1980), a drawee is liable on a check if it accepts the check in writing. (It can also be liable if the check is certified, but that has nothing to do with this case.) Here, it is undisputed that the Fremont National Bank & Trust Co. never agreed in writing to accept the check that Mumma delivered to W.B. Farms. The plaintiff claims, however, that an agent of Fremont (about whose authority no question is raised) made an oral agreement to pay the check, and that the oral agreement is valid and enforceable.
 
 
 4
 The validity of this agreement is a question of Nebraska law. Although courts strive for uniformity in the interpretation of the Uniform Commercial Code, the Code still represents the act of the legislatures of the various states that have adopted it, and we have no general license to federalize the U.C.C. by interpreting it according to our own lights. As with other questions of state law, we normally defer to the knowledge and experience of a district judge sitting in the state whose law is involved. His or her judgment as to the content of state law is usually accepted unless it is "deficient in analysis or otherwise lacking in reasoned authority." Ancom, Inc. v. E.R. Squibb & Sons, Inc., 658 F.2d 650, 654 (8th Cir.1981). Here, there is no opinion of the Supreme Court of Nebraska rejecting the District Court's holding that an oral agreement to accept a check is valid as a matter of Nebraska law.
 
 
 5
 We accept this holding. In principle, we see no reason why a bank cannot make any contract it wishes, so long as no provision of positive law purports to take away its right to do so. No such provision in the Uniform Commercial Code is suggested, and, as a matter of fact, Sec. 4-103(1) of the Code specifically provides that provisions of Article 4 may be varied by contract. Fremont argues that this provision of the Code is not meant to include agreements concerning the drawee bank's obligation to pay checks since the conditions for such agreements are already covered in the U.C.C. provisions for acceptance, guaranty, assignment, and certification. If such agreements were effective, the argument runs, then the U.C.C. provisions governing certification, guaranty, assignment, and acceptance would be undercut. In support of this proposition, Fremont cites the case of Sabin Meyer Regional Sales Corp. v. Citizens Bank, 502 F.Supp. 557 (N.D.Ga.1980). In Sabin, bank officers assured the plaintiff that the drawer's account contained and would contain sufficient funds to cover the checks when they were presented. This "agreement" is akin to an oral acceptance or certification of the checks, and its enforcement would arguably encroach upon the U.C.C. provisions requiring written acceptance or certification. In contrast, the agreement here is much less like an acceptance or certification. Fremont, unlike the bank in Sabin, did not unconditionally agree to pay the check, but rather agreed to pay it only if and when there were sufficient funds in the drawer's account. Thus, Fremont had no duty to pay the check unless sufficient funds came into the account during the time that it agreed to hold the check.
 
 
 6
 Concededly, there are several policies which favor the exclusion of conditional agreements to pay, such as the prevention of fraudulent claims against banks and the promotion of efficient banking practice. But on the other hand, the policies of contractual freedom and the protection of reasonable expectation would support allowing such agreements. In the absence of any controlling Nebraska law on this matter or any compelling reasons for disallowing such agreements, we shall defer to the District Court's interpretation of state law. We, therefore, hold that the oral agreement alleged here is valid and enforceable under Nebraska law.
 
 B.
 
 7
 Fremont argues that its head teller did not in fact make the agreement claimed. Certainly a jury might have agreed with Fremont on this proposition, but it need not have done so. There is sufficient evidence in the record to justify the jury's finding that the agreement claimed by W.B. Farms in fact was made. The head teller of the Farmers State Bank testified that Fremont agreed to pay Mumma's check whenever funds sufficient to pay it came into Mumma's account. The head teller of the bank at Fremont testified, on the contrary, that the agreement was only to pay Mumma's check if sufficient funds were in Mumma's account when the check first arrived at Fremont. This is exactly the kind of conflict that juries are designed to resolve.
 
 
 8
 Fremont also objects that the District Court improperly invaded the province of the jury by instructing it that Fremont had entered into a contract, leaving to the jury only the issue of the contents of the contract. The jury was not left free, in other words, to find that no contract or agreement at all was ever made. With this argument there are at least two difficulties. First, there is no evidence at all here that no contract or agreement was made. Both banks agree that there was an agreement. The difference between them is simply as to what the agreement contained. This is not a case where, for example, Fremont's head teller took the position that no telephone conversation with the Farmers State Bank ever occurred. Everyone concedes that the conversation occurred, that some agreement was reached, and that the check was then sent to Fremont. The only question for the jury, and the question that the District Court left to the jury, was what agreement had been made with respect to the conditions under which, and the time at which, Fremont would pay the check.
 
 
 9
 In any event, no objection was made by Fremont to jury instruction no. 9, of which Fremont now complains. Under Fed.R.Civ.P. 51 no error with respect to the jury instruction is preserved for appellate review (absent exceptional circumstances not here present) unless, before the jury retires, counsel for appellant objected to the instruction and brought to the attention of the court in plain and distinct terms the grounds of his objection. The present record contains no such objection, and we must reject Fremont's position on appeal for this additional reason.
 
 C.
 
 10
 In addition, Fremont argues that there is insufficient evidence to support the jury's finding that an agreement existed which would impose a duty to pay the check in question. Essentially, this argument goes to two aspects of the agreement: (1) its lack of specificity as to whether payment was to be from both uncollected and collected funds or just collected funds; and (2) its lack of specificity as to whether Fremont must pay the check before paying other checks.
 
 
 11
 On the first point, W.B. Farms argues that the agreement is to be construed as requiring Fremont to pay only if there were sufficient credible funds in the drawer's account, whether or not these funds were collected. By credible funds W.B. Farms means funds on deposit which, even if uncollected at the time, the bank was virtually certain would be collected. We believe that this is a reasonable interpretation of the agreement and find ample evidence to support the conclusion that the account contained sufficient credible funds. Notably, John Haslam, executive vice-president of Fremont, and Audrey Renter, the head teller at Fremont, both testified that there were sufficient credible funds to pay the $31,358.50 check. Tr. 153, 91.
 
 
 12
 As to the second point, it is true that the agreement did not state the order in which the W.B. Farms check would be paid relative to other checks presented against the account. Fremont argues that absent an agreement as to the order of payment, it was entitled to pay the check in any order it deemed appropriate, as provided in Neb.Rev.Stat. (U.C.C.) Sec. 4-303(2) (Reissue 1980). Even assuming that Fremont had no duty to pay the check in any particular order, this still would not under the present facts relieve Fremont from its duty to pay the check. On November 15, 1979, the drawer's account had a balance of $42,841.07 in credible funds after all the other checks presented for payment had been paid. Thus, on this day the bank had sufficient credible funds to pay the check even if it chose to pay the check last of all the checks presented. The fact that on the next day, November 16, the bank deducted $16,087 from the drawer's account pursuant to a security agreement in no way alters the fact that on the previous day sufficient credible funds were available to pay the check.
 
 III.
 
 13
 We also have before us the cross-appeal of W.B. Farms. It claims that it should have been allowed prejudgment interest on the amount of the check. The District Court denied this element of relief, and again the question is one of state law, on which we are inclined to accept district judges' judgment if they have some reasonable warrant in the law of their own states. The District Court cited Church of the Holy Spirit v. Bevco, Inc., 215 Neb. 299, 308-09, 338 N.W.2d 601, 606-07 (1983), for the proposition that a claim is "liquidated," so as to justify the award of prejudgment interest, if no reasonable controversy exists either "as to the plaintiff's right to recover or as to the amount of recovery...." Designated Record at 63. See also Classen v. Becton, Dickinson & Co., 214 Neb. 543, 545, 334 N.W.2d 644, 645 (1983). Here, the amount of recovery was never in doubt: if Fremont is liable at all, the amount of its liability is the amount of the check. In this sense, W.B. Farms' action was for a "liquidated amount." But the right of W.B. Farms to recover in the first place was subject to reasonable controversy, and the jury would have been supported by sufficient evidence had its verdict gone the other way. If Bevco states the law of Nebraska, the District Court's resolution of the prejudgment-interest question must be affirmed.
 
 
 14
 W.B. Farms cites language from a number of other opinions of the Supreme Court of Nebraska. See, e.g., Edquist v. Commercial Savings & Loan Ass'n, 191 Neb. 618, 623-24, 217 N.W.2d 82, 85-86 (1974). After examining the Nebraska opinions on the question of prejudgment interest cited by both sides, we are bound to say that all of the language in all of the opinions is not completely reconcilable. Some statements seem to look one way, and some the other, so far as this question is concerned. (The same observation could no doubt be made of many of our own opinions on various questions. Although complete verbal consistency in the phrasing of legal formulae may be desirable, it is not often attained.) Here, a passage in an opinion of the Supreme Court of Nebraska which is less than two years old clearly supports the District Court's resolution of this issue. We cannot say with assurance that it was wrong, and we shall therefore not disturb it.
 
 The judgment of the District Court is
 
 15
 Affirmed.
 
 
 
 [1]
 The Hon. Clarence Arlen Beam, United States District Judge for the District of Nebraska