EMPLOYERS REINSURANCE CORPORATION, A MISSOURI CORPORATION, AS ASSIGNEE OF ROGER BROCKMANN AND PATRICIA BROCKMANN, HUSBAND AND WIFE, APPELLEE, V. SANTEE PUBLIC SCHOOL DISTRICT NO. C-5, A NEBRASKA POLITICAL SUBDIVISION, APPELLANT.

438 N.W.2d 124

Filed April 7, 1989.   No. 87-574.

John M. Peebles, of Domina, Gerrard, Copple & Stratton, P.C., and, on brief, Dean J. Sitzmann, of Steier & Kreikemeier, P.C., for appellant.

Gregory M. Neuhaus, of Archbold & Neuhaus, and John Thomas for appellee.

HASTINGS, C.J., WHITE, CAPORALE, and FAHRNBRUCH, JJ., and COADY, D.J.

CAPORALE, J.

As a result of the failure of defendant-appellant, Santee Public School District No. C-5, to fulfill its contractual obligation to provide health insurance coverage to Roger Brockmann, Employers Reinsurance Corporation, apparently as the errors and omissions carrier for First Americans Insurance Service, the entity which was to have provided the coverage for the district, paid certain of Brockmann's health costs. Nine days later, Employers took an assignment of such causes of action as Brockmann possessed, brought this suit, and recovered a judgment of $47,639.57 against the district. The district appeals, assigning as error the trial court's (1) failure to find the suit barred by Employers' failure to comply with the Nebraska Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-901 et seq. (Reissue 1987), (2) overruling of the district's motion to file a third-party complaint against First Americans, (3) striking of the district's affirmative defense relating to the "wrongful actions" of First Americans, and (4) computation of damages. We reverse and remand for further proceedings.

## I. THE RECORD

Employers' amended third amended petition asserts the district's aforesaid contractual obligation and alleges the district had obtained insurance coverage in fulfillment of that obligation with Blue Cross/Blue Shield, but later canceled same

without having acquired other insurance; that Brockmann subsequently underwent major surgery, thereby incurring medical expenses which were not reimbursed by the district; and that the district "breached its contract with [Brockmann] by not providing insurance coverage as agreed."

The district moved to make First Americans a third-party defendant to the action on the ground that First Americans would be liable to the district for all or part of any judgment which might be entered against the district and in favor of Employers. The proposed third-party complaint attached to the motion averred that the district and First Americans had agreed that First Americans would provide health insurance coverage for the district; that First Americans thereafter advised the district that persons such as Brockmann "were provided health insurance coverage, including hospitalization, surgical and other coverage by Central Reserve Life Insurance," and, thus, the district could cancel its present insurance coverage; that the district did so cancel; that Brockmann was thereafter hospitalized for major surgery; that First Americans then informed the district it "was not covered by the Central Reserve Life Insurance policy"; and that if the district "is held liable to Brockmanns, [the district] will be entitled to indemnification from First Americans." On Employers' motion, the trial court denied the district leave to file its proposed third-party complaint.

As originally filed, the district's answer included as an affirmative defense allegations which were essentially the same as those contained in the proposed third-party complaint, asserting that First Americans breached its obligation to provide the district with replacement insurance. As part of this defense, the answer also asserts the claim that as a result of First Americans' failure to provide replacement insurance coverage, Employers, as First Americans' insurer, is contractually obligated to indemnify the district. This affirmative defense was stricken pursuant to Employers' motion.

Ultimately, a jury was waived, and a bench trial was had solely on the basis of stipulations entered into by the parties. Specifically, Employers and the district stipulated that the district was contractually obligated to provide Brockmann with

complete health insurance coverage; that Brockmann incurred medical expenses in the sum of $48,807.11; that his expenses were not covered by health insurance; that Blue Cross/Blue Shield would have provided $47,649.57 in coverage; that Central Reserve Life would have provided $47,639.57 in coverage; and that Employers paid Brockmann the sum of $48,287.

## II. ANALYSIS

### 1. Tort Claims Act

The district concedes that this is a contract action but, in support of the first assignment of error, contends that contract actions are within the Political Subdivisions Tort Claims Act; thus, according to the district, Employers was required to have alleged and proved compliance with the act, which it did not do.

The filing of a notice of claim under the Political Subdivisions Tort Claims Act is a condition precedent to the institution of a suit to which the act applies. *West Omaha Inv. v. S.I.D. No. 48*, 227 Neb. 785, 420 N.W.2d 291 (1988); *Parriott v. Drainage Dist. No. 6*, 226 Neb. 123, 410 N.W.2d 97 (1987); *Utsumi v. City of Grand Island*, 221 Neb. 783, 381 N.W.2d 102 (1986); *Campbell v. City of Lincoln*, 195 Neb. 703, 240 N.W.2d 339 (1976). See, also, *Franklin v. City of Omaha*, 230 Neb. 598, 432 N.W.2d 808 (1988). We have held that when the act is applicable, the failure to allege compliance with its provisions is a fatal defect, rendering the petition defective and subject to a demurrer. *Utsumi v. City of Grand Island, supra.*

A school district is, by definition, a political subdivision. § 13-903(1). Section 13-902 provides in relevant part that no political subdivision shall be liable for "the torts of its officers, agents, or employees" and that no suit shall be maintained against a political subdivision "except to the extent, and only to the extent provided by this act." Section 13-903 defines a tort claim as

any claim against a political subdivision for money only on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the political subdivision, while acting within the scope of his or her office or employment, under circumstances in which the

political subdivision, if a private person, would be liable to
the claimant for such damage, loss, injury, or death . . . .

The present action does not involve a claim "on account of
damage to or loss of property or on account of personal injury
or death" as the result of negligence; rather, the claim is based
on the district's breach of its contract with the Brockmanns to
provide health insurance. Therefore, the act does not apply. See
*L. J. Vontz Constr. Co. v. State*, 230 Neb. 377, 432 N.W.2d 7
(1988), wherein we determined that a claim based on a contract
was not a "tort claim" under the State Tort Claims Act, Neb.
Rev. Stat. § 81-8,210(4) (Reissue 1987), and that, therefore, the
contract claim was not within the jurisdiction of the State
Claims Board but was instead within the jurisdiction of the
Department of Administrative Services. The State Tort Claims
Act defines "tort claims" in the same words as does the Political
Subdivisions Tort Claims Act.

Because the Political Subdivisions Tort Claims Act does not
apply, the trial court did not err as claimed in the first
assignment of error.

## 2. Third-Party Complaint

The district next argues that the trial court abused its
discretion in refusing to permit First Americans to be joined as
a third-party defendant.

The matter of granting leave to file a third-party complaint
under Neb. Rev. Stat. § 25-331 (Reissue 1985) is within the
discretion of the trial court. *Life Investors Ins. Co. v. Citizens
Nat. Bank*, 223 Neb. 663, 392 N.W.2d 771 (1986); *AgriStor
Credit Corp. v. Radtke*, 218 Neb. 386, 356 N.W.2d 856 (1984);
*Northwestern Bell Tel. Co. v. Woodmen of the World Life Ins.
Soc.*, 189 Neb. 30, 199 N.W.2d 729 (1972).

Section 25-331 provides in part:

At any time after commencement of the action, a
defendant, as a third-party plaintiff, may cause a
summons to be served upon a person not a party to the
action who is or may be liable to him for all or part of the
plaintiff's claim against him. The third-party plaintiff
must obtain leave of the trial court on motion upon notice
to all parties to the action before filing a third-party
complaint. . . . The court on its own motion, or motion of

any party, may move to strike the third-party claim, or for its severance or separate trial if the third-party claim should delay trial, might tend to confuse a jury, or in any way jeopardize the rights of the plaintiff.

We have said, "A third-party claim under § 25-331 may be asserted *when a third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defendant.*" (Emphasis in original.) *Life Investors Ins. Co. v. Citizens Nat. Bank, supra* at 670, 392 N.W.2d at 776; *AgriStor Credit Corp. v. Radtke, supra*; *Church of the Holy Spirit v. Bevco, Inc.*, 215 Neb. 299, 338 N.W.2d 601 (1983). "The basic function of third-party practice is the original defendant's seeking to transfer to the third-party defendant the liability asserted by the original plaintiff." *Life Investors Ins. Co. v. Citizens Nat. Bank, supra* at 670-71, 392 N.W.2d at 776; *AgriStor Credit Corp. v. Radtke, supra*; *Church of the Holy Spirit v. Bevco, Inc., supra.* In *Church of the Holy Spirit v. Bevco, Inc., supra,* we noted that § 25-331 was patterned on rule 14 of the Federal Rules of Civil Procedure, and quoted with approval 3 J. Moore, Moore's Federal Practice ¶ 14.04 (2d ed. 1983):

"The general purpose of Rule 14 is to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him, and a judgment in his favor against the third-party defendant."

*Church of the Holy Spirit v. Bevco, Inc., supra* at 306, 338 N.W.2d at 605.

Under § 25-331, in order for a defendant, as a third-party plaintiff, to serve summons upon one not a party to the action, the nonparty must be someone who is or may be liable to the defendant for all or part of the plaintiff's claim against the defendant. *Life Investors Ins. Co. v. Citizens Nat. Bank, supra*; *AgriStor Credit Corp. v. Radtke, supra*; *Church of the Holy Spirit v. Bevco, Inc., supra.* In *AgriStor Credit Corp. v. Radtke, supra,* we held that where the defendants' motion and third-party petition neither alleged nor advanced the theory

that the third-party defendants might be liable to the defendants for all or a part of the plaintiff's claim against the defendants, it was error for the trial court to permit the filing of the third-party petition.

In its proposed third-party complaint against First Americans, the district pled sufficient allegations to support a theory that First Americans would be liable to the district as the result of First Americans' breaching its contract to provide the requisite insurance coverage, thereby meeting the requirements of § 25-331. However, under § 25-331, a trial court may nevertheless strike an otherwise appropriate third-party complaint where such complaint could delay trial, might tend to confuse a jury, or could in any way jeopardize the rights of the plaintiff. The determination of whether First Americans contracted to provide the district with the requisite insurance, whether it told the district to cancel the existing insurance, and whether it thereafter failed to provide replacement insurance and thereby became liable to the district involves substantially different facts than the determination of whether the district breached its contract to provide Brockmann with health insurance coverage. Thus, in the then posture of the case, the trial court did not abuse its discretion in concluding that the addition of First Americans as a third-party defendant would delay the trial, confuse the fact finder, and thereby jeopardize Employers' rights. Thus, there is no merit to the second assignment of error.

### 3. Affirmative Defense

The district next complains that by striking its affirmative defense, as described in part I above, the trial court deprived the district of the opportunity to prove the relationship which existed between it and Employers and thus divested it of the ability to show that it could not be held liable to Employers.

### a. Appropriateness of Defense

In its stricken affirmative defense, the district alleges, as stated earlier in part I, that, among other things, First Americans wrongly failed to provide the district with replacement insurance.

Neb. Rev. Stat. § 25-812 (Reissue 1985) sets forth the procedure for pleading an affirmative defense:

The defendant may set forth in his answer as many grounds of defense, counterclaim, and setoff as he may have. Each must be separately stated and numbered, and they must refer in an intelligible manner to the cause of action which they are intended to answer. . . .

Employers is correct in asserting that it is not a proper defense to an action that a judgment against the defendant will obligate a third party to indemnify the defendant. *Andersen v. Gold Seal Vineyards*, 81 Wash. 2d 863, 505 P.2d 790 (1973). Further, a defense may not be based on allegations of wrongdoing which are unrelated to the plaintiff's cause of action. See *TNT Communications v. Mgt. Tel.*, 32 A.D.2d 55, 299 N.Y.S.2d 692 (1969), *aff'd* 26 N.Y.2d 639, 255 N.E.2d 780, 307 N.Y.S.2d 667 (1970).

However, the district's affirmative defense also asserts that "Employers is the insurer of First Americans and required pursuant to its contract of insurance to indemnify, pay and hold [the district] harmless from all losses described in Plaintiff's Amended Third Amended Petition." As the discussion which follows demonstrates, these allegations, coupled with the claim that First Americans wrongly failed to provide replacement insurance, are sufficient to state an affirmative defense which does refer in an intelligible manner to Employers' cause of action against the district.

*Midwest Lumber Co. v. Dwight E. Nelson Constr. Co.*, 188 Neb. 308, 312, 196 N.W.2d 377, 380 (1972), holds that where an owner contracts to procure insurance to cover a builder and fails to do so, the owner becomes the builder's insurer, and the owner's insurer may not recover against the builder, because "[t]he rights of a subrogated insurer can rise no higher than the rights of its insured against the third party [and an] insurer cannot recover by right of subrogation from his own insured." Thus, if Employers is First Americans' insurer and is thereby contractually required to indemnify First Americans for First Americans' alleged failure to provide insurance, and, through that relationship with First Americans, Employers is obligated to indemnify the district as well, then both First Americans and the district are Employers' insureds, and Employers could not maintain an action against either of them. This is so because no

right of subrogation can arise in favor of an insurer against its own insured. *Control Specialists v. State Farm Mut. Auto. Ins. Co.*, 228 Neb. 642, 423 N.W.2d 775 (1988); *Reeder v. Reeder*, 217 Neb. 120, 348 N.W.2d 832 (1984). Were the rule otherwise, an insurer would be able to recover from its insured for the very risk the insurer contracted to protect the insured against. See *Stetina v. State Farm Mut. Auto. Ins. Co.*, 196 Neb. 441, 243 N.W.2d 341 (1976).

Furthermore, if Employers paid off Brockmann's claim because Employers is the insurer for First Americans, then Employers' right of subrogation is traced through First Americans. The right of an insurer to recover against a wrongdoer whose conduct has subjected the insurer to a liability, whether the insurer's right be based on equitable subrogation or express assignment, is traced through the insured. *Reeder v. Reeder, supra.*

We recognize that Employers purported to take an assignment of Brockmann's causes of action and thus proceeds on the basis of that assignment rather than on any theory of subrogation. However, an insurer cannot defeat the law of subrogation by taking an assignment against its insured. See, *Md. Cas. Co. v. Gough*, 146 Ohio St. 305, 65 N.E.2d 858 (1946); *Oxford Credit Ass'n v. Bk. of Oxford*, 196 Miss. 50, 16 So. 2d 384 (1944); *Meyers v. Bank of America etc. Assn.*, 11 Cal. 2d 92, 77 P.2d 1084 (1938) (holding that where by the application of equitable principles a surety has been found not to be entitled to subrogation, an assignment will not confer on the surety the right to be so substituted in an action at law upon the assignment). Thus, if the facts are as the district alleges them to be, Brockmann's assignment to Employers is ineffective to give Employers a right against the district, one of Employers' insureds, greater than its other insured, First Americans, has against the district.

Moreover, once Employers paid Brockmann, Brockmann's right to pursue his claim against the district was destroyed, as Brockmann would not be permitted a dual recovery. Therefore, there was in existence no enforceable claim against the district which Brockmann could assign to Employers and which would support a recovery in favor of Employers. See, *St. Paul Fire &*

*Marine Ins. Co. v. Mich. Nat. Bank*, 660 F.2d 196 (6th Cir. 1981); *American Surety Co. v. Bank of California*, 133 F.2d 160 (9th Cir. 1943). (For the interplay of "loan receipts" or "loan agreements," see, inter alia, *Hammond v. Nebraska Nat. Gas Co.*, 209 Neb. 616, 309 N.W.2d 75 (1981), and *Tober v. Hampton*, 178 Neb. 858, 136 N.W.2d 194 (1965), *overruled in part*, *Royal Ind. Co. v. Aetna Cas. & Sur. Co.*, 193 Neb. 752, 229 N.W.2d 183 (1975).)

The trial court thus erred in striking the district's affirmative defense against Employers. The district should have been given an opportunity to prove that Employers could not maintain an action against the district either because the district is Employers' insured or because the district is First Americans' insured, and Employers' rights against the district, as the insurer for First Americans, extend only as far as do the rights of First Americans.

### b. Not Moot

Employers attempts to persuade us that, in any event, the allegations concerning its relationship to First Americans and the district and the obligations arising therefrom are moot insofar as this action is concerned, for the district has filed a separate action against First Americans, First Americans' agent, and Central Reserve Life, which action will adjudicate such rights as may exist among the parties in that action. It is of course true that as a general rule, appellate courts do not sit to give opinions on moot or abstract questions, and an appeal will ordinarily be dismissed where no actual controversy exists between the parties at the time of the hearing. *Williams v. Hjorth*, 230 Neb. 97, 430 N.W.2d 52 (1988). A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive or the parties lack a legally cognizable interest in the outcome. *Mullendore v. School Dist. No. 1*, 223 Neb. 28, 388 N.W.2d 93 (1986). See, also, *Mullendore v. Nuernberger*, 230 Neb. 921, 434 N.W.2d 511 (1989) (as any other lawsuit, a declaratory judgment action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action).

Here, however, there exists an actual controversy between the district and Employers, for there is nothing abstract about the judgment which has been rendered against the district. The judgment subjects the district's assets to levy by execution. The fact that some other entity may later be held obligated to indemnify the district for any losses the district may suffer as a result of that judgment does not mean the issues presented by this appeal are no longer alive or that the parties lack a legally cognizable interest in the outcome. Accordingly, the appeal is far from moot.

### 4. Damages

This leaves the question raised by the fourth and final assignment of error, Should the district fail to prove its defense, what are the appropriate damages to be awarded Employers?

The measure of damages for the breach of a contract to obtain insurance is that amount which would have been recovered had the insurance been furnished as agreed. *Action Ads, Inc. v. Judes*, 671 P.2d 309 (Wyo. 1983); *Hardcastle v. Greenwood Sav.*, 9 Wash. App. 884, 516 P.2d 228 (1973); *Les Shellabarger Chevrolet, Inc. v. Romero*, 490 P.2d 98 (Colo. App. 1971); *Mid-America Corporation v. Roach*, 412 P.2d 188 (Okla. 1966).

The parties stipulated that although Blue Cross/Blue Shield would have provided $47,649.57 in coverage, the substitute coverage which First Americans was to have provided through Central Reserve Life would have provided $47,639.57 in coverage. Since it is the Central Reserve Life coverage which would have been furnished had First Americans performed as the district claims it was contractually obligated to do, the appropriate damages would be $47,639.57, as the trial court determined.

### III. DECISION

Because the trial court erroneously deprived the district of the opportunity to prove its relationship with First Americans and thus establish its rights vis-a-vis Employers, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.