KANSAS-NEBRASKA NATURAL GAS COMPANY, INC., A CORPORATION, APPELLEE, v. HAWKEYE-SECURITY INSURANCE COMPANY, APPELLANT.

240 N. W. 2d 28

Filed March 25, 1976. No. 40242.

William P. Mueller and C. Kenneth Spady of McGinley, Lane, Mueller, Shanahan, McQuillan & Gale, for appellant.

Wright & Simmons, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

This is an action to recover on a comprehensive liability insurance policy issued by the defendant, Hawkeye-Security Insurance Company, to Gilbert O. Huston, a judgment debtor of the plaintiff, Kansas-Nebraska Natural Gas Company, Inc. (hereinafter referred to as the gas company). The District Court found for the gas company, and the defendant appeals. We reverse and dismiss.

On *December 15, 1959*, Gilbert O. Huston, an excavator, was digging a sewer trench in Scottsbluff, Nebraska, when he struck and damaged one of the gas company's natural gas pipelines with his back-hoe. Huston refilled the trench and covered the pipeline without notifying the gas company of the damage. On November 30, 1965, Huston purchased a comprehensive general liability insurance policy from the defendant, Hawkeye-Security Insurance Company. This policy did not pro-

vide coverage for completed operations, that is, accidents occurring after an excavation was completed.

On *January 28, 1966,* over 6 years later, a fire occurred at the residence of Harvey Duy which resulted in the death of Stephen Duy, personal injury to others, and damage to the Duy house. The fire was caused by gas which leaked from the gas company's pipeline. The leak was apparently caused by the damage done to the pipeline by Huston 6 years earlier. The Duys brought three negligence actions against the gas company. On May 2, 1969, the gas company entered into a settlement agreement with the Duys, agreeing to pay them $20,000 in return for a release from all liability resulting from the fire.

The gas company then brought an action against Huston and certain other parties who were involved in the trenching operations for indemnification for the money paid to the Duys, and for the accompanying legal expenses. Huston requested that the Hawkeye-Security Insurance Company defend him under the liability insurance policy, but the defendant refused on the basis that there was no coverage. The gas company then entered into an agreement with Huston and the other defendants in that action, in which the parties agreed to enter into a stipulation whereby a judgment would be entered against Huston alone. However, the gas company agreed not to enforce the judgment against Huston and in return, Huston assigned all his rights under the Hawkeye-Security Insurance Company's policy. The defendants in that action, including Huston, also agreed to pay the gas company $12,000. The stipulation was filed and judgment was entered on March 22, 1973, against Huston for $35,031.12, plus $4,748.50 in costs and attorneys' fees.

The gas company then brought this action against the defendant, Hawkeye-Security Insurance Company, on May 17, 1973, alleging that coverage existed under the policy issued by the defendant to Huston. The de-

fendant denied that coverage existed, but the District Court entered a judgment in favor of the gas company for $23,031.12 and interest, plus total court costs of $2,278.40. The defendant appeals that decision, arguing that there was no coverage for completed operations. We agree with the defendant's contention and reverse the decision of the District Court.

The gas company claims that the policy provides for completed operations coverage. The contention is that an endorsement in the comprehensive liability policy is ambiguous. It therefore follows, under the reasoning of the gas company, that if the endorsement can be interpreted to provide completed operations coverage then it should be construed against the insurer. A highly complex analysis of the rhetoric and language of the endorsement is used to support this position. As we see it, the gas company's interpretation of the endorsement is strained and fails to relate to an interpretation of the insurance contract when viewed as a whole. In the resolution of a controversy concerning the meaning of an insurance contract and the coverage therein, the contract must be viewed as a whole. See Kent v. Dairyland Mut. Ins. Co., 177 Neb. 709, 131 N. W. 2d 146 (1964). An insurance contract must be construed so as to give effect to the intent of the parties at the time the contract was made. See, Kent v. Dairyland Mut. Ins. Co., *supra*; Morton v. Travelers Indemnity Co., 171 Neb. 433, 106 N. W. 2d 710. We feel, from reading the insurance contract as a whole, and considered in the context of the undisputed facts, that both Huston and the insurer did not intend to provide completed operations coverage for Huston, covering negligent accidents occurring before the issuance of the policy and ripening into a damage claim many years after the excavation operation was completed.

On the declarations page there are listed five types of hazards which could be covered and the premiums paid for each coverage. One of the hazards was entitled

"Products (Including Completed Operations)" and was set out clearly on the page. Under that heading were typed the words "NOT COVERED" in large capitalized letters. With this provision on the declarations page, it is hard to imagine that Huston failed to understand he did not have completed operations coverage. If Huston had wished to have completed operations coverage so that he would have liability protection for damage occurring after he completed the work on a job site, he could have done so by paying an additional premium. This payment would have been indicated on the declarations page. Instead, there are the words "NOT COVERED," and no premium is charged.

The gas company argues that Huston had no reason to expect completed operations coverage to be treated under the heading of "Products Hazard," when the insured did not deal with any products. This argument has no merit. On the declarations page, the words "(Including Completed Operations)" are set out clearly after the hazard entitled "Products." This provision is not buried in the fine print sections, but is a basic provision in the policy declaration of coverage. Other courts have found that no coverage existed under similar policies, and this appears to be the majority position. See, Kansas City Insulation Co. v. American Mut. Liability Ins. Co., 405 F. 2d 53 (8th Cir., 1968); Neumann v. Wisconsin Natural Gas Co., 27 Wis. 2d 410, 134 N. W. 2d 474 (1965).

In addition, the policy issued by the defendant on endorsement CL 515B, states as follows: "It is agreed that the policy does not apply to the Products Hazard as defined therein. It is further understood and agreed that the word 'operations' as used in the *Products Hazard* includes any act or omission in connection with operations performed by or on behalf of the named insured on the premises or elsewhere, *whether or not goods or products are involved in such operations.*" (Emphasis supplied.) These two easily understood sen-

tences incontestably demonstrate that the intent of the parties was that a product need not be actually involved in completed operations coverage. In Neumann v. Wisconsin Natural Gas Co., *supra,* where the policy provisions defined operations almost precisely the same as in the present policy, the court stated: "The 'operations' definition of the subject policy contemplates an insured who is engaged in operations that are something *more than the handling of goods.* We think there is nothing ambiguous about the policy provisions in this respect. * * * The insurance contract covered liability for injuries or damages arising out of accidents that occurred before the operations of the excavating contractor had been completed on November 3d; that since this accident did not occur until November 18th, *the operations had been completed and there was no coverage. Coverage, limited as it always must be, results from contract and the parties simply did not contract to cover this risk."* (Emphasis supplied.)

It can be clearly seen that the insurance policy in this case plainly specified that completed operations coverage was not purchased. There is no ambiguity in the language of the policy and "insurance companies have the same right as individuals to limit their liability." See Lonsdale v. Union Ins. Co., 167 Neb. 56, 91 N. W. 2d 245.

The plaintiff attempts to avoid the defendant's argument by contending that the defense there was no completed operations coverage cannot be raised by the defendant because the defendant did not plead such a defense in its answer. It is true that affirmative defenses must be pleaded in order to be considered. See Wiltrout v. Showers, 82 Neb. 777, 118 N. W. 1080. Generally, exclusions in insurance policies are treated as affirmative defenses, and therefore must be specifically pleaded. See, 44 Am. Jur. 2d, Insurance, § 1947, p. 886; 19 Couch on Insurance (2d Ed.), § 76:197, p. 130. The

crucial question is whether the section of the policy which provided for no coverage for completed operations is an exclusion, and as a result must be specifically pleaded. We believe that it is not an exclusion.

An exclusion is the act of expelling from a place or a position previously occupied. See Webster's Dictionary (3d Ed., Unabr.). In an insurance policy, an exclusion is a provision which eliminates coverage where, were it not for the exclusion, coverage would have existed. If the declaration which lists completed operations as not covered was eliminated from the policy, there would still be no coverage since there is no other provision under which coverage existed. The declarations page lists all the risks covered. When the declarations page lists something as "NOT COVERED," this is not an exclusion. Rather than an exclusion, the declarations provisions are simply part of the basic insuring agreement. Huston merely decided not to add completed operations coverage to his protection.

Our decision is consistent with the purpose of pleading as determined by this court. In Marshall v. Rowe, 126 Neb. 817, 254 N. W. 480, this court stated: "According to the weight of authority, an answer is a pleading, the purpose of which is to notify the court and the plaintiff of the defense relied upon so that the latter may be prepared to meet it." In its answer, the defendant stated that "its policy of insurance did not and does not provide coverage for Huston." This general denial should have directed the gas company's attention to the declarations page to determine what coverage existed. There is nothing in the record to support a finding of prejudice or surprise, or that the plaintiff was unaware of the precise issue involved. No factual dispute is at issue in the case, and the question of law as to the construction of the insurance contract was clearly the precise issue from the beginning in the controversy. There is no merit to this contention.

The judgment of the District Court is reversed and the cause remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.