LEASE NORTHWEST, INC., APPELLEE, V. MARGARET DAVIS, APPELLANT.

400 N.W.2d 220

Filed January 30, 1987.   No. 85-519.

Donn E. Davis and Gregory B. Bartels of Crosby, Guenzel, Davis, Kessner & Kuester, for appellant.

Gary L. Dolan and Trev E. Peterson of Knudsen, Berkheimer, Richardson & Endacott, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

The plaintiff-appellee, Lease Northwest, Inc., a corporation, sued the defendant-appellant, Margaret Davis, on her written promise to guaranty the obligations of Davis Distributing Co., Inc. (Davis company), a corporation, and of Thomas Davis. Margaret Davis appeals from the judgment of $131,845 plus prejudgment interest entered against her, and assigns seven errors which present three issues: Whether the trial court erred in (1) preventing her from adducing certain evidence, (2) striking a defense, and (3) granting prejudgment interest. We affirm.

Lease Northwest alleged, in essence, that Margaret Davis guarantied the debts of Thomas Davis to it and of the Davis company to it and its predecessor, NBC Leasing Co., a corporation; that NBC Leasing conveyed all its right, title, and interest in and to the guaranty of Margaret Davis to Lease Northwest; that the Davis company and Thomas Davis failed

to make the payments required of them; and that as a consequence Margaret Davis owed Lease Northwest the aforesaid principal sum plus interest in accordance with the agreed terms.

Margaret Davis generally denied Lease Northwest's allegations and further alleged, insofar as is relevant to the issues presented by her assignments of error, that Lease Northwest and NBC Leasing took a security interest in the Davis company's assets, including an assignment of its accounts receivable; that Lease Northwest "negligently and wrongfully" failed to protect its security interests and "failed to take reasonable action" to collect the Davis company's accounts receivable; and that as a consequence Lease Northwest failed to mitigate its damages.

So far as is relevant to the issues raised by the assignments of error, the trial judge's "pretrial notes" identified Margaret Davis' issue to be "mitigation of damages." The pretrial notes also permitted Margaret Davis to depose Fred Silman, an employee of Lease Northwest, if he could be found.

Lease Northwest adduced evidence that on June 14, 1974, the Davis company entered into a "Master Lease" agreement with NBC Leasing whereunder NBC Leasing purchased equipment from the Davis company and leased the equipment back to the company, which then subleased the equipment to others. The master lease was executed on behalf of the Davis company by Thomas Davis, its president, whose signature was attested by his mother and secretary of the corporation, Margaret Davis. Thomas Davis and his wife, Marilyn, also signed a guaranty, which provides:

> The undersigned guarantors jointly and severally unconditionally guarantee the prompt payment when due of each monthly rental payment due and payable under the foregoing Lease Agreement, and to enforce the liability of guarantors hereunder, Lessor shall not be required, first to (a) give guarantors notice of Lessee's default; (b) repossess the equipment; or (c) attempt to enforce the liability of Lessee under the Lease Agreement. Lessor may from time to time accept late payments of rental and may extend the term of this Lease without

defeating or diminishing this continuing guaranty. This is a guarantee of payment and not of collection.

Certain sublessees defaulted on their payments owed to the Davis company, which in turn defaulted on the payments it owed to NBC Leasing. As a consequence, on March 1, 1979, NBC Leasing and the Davis company renegotiated their arrangement, and Margaret Davis executed an agreement which identified her as a guarantor and recognized that "the Guarantors have guaranteed payment of all obligations of the Lease," and under which she agreed that all provisions of the master lease not otherwise modified "and any related agreements shall remain in full force and effect," and that guarantors agreed "that the foregoing shall not affect the continuing guaranty of each of them of the Lease, or of [the Davis company's] obligations thereunder."

The Davis company was later dissolved, after which Thomas Davis continued to do business individually as Davis Distributing. Thomas Davis' sublessees continued to experience financial distress, and in July or August of 1980 "Thomas Davis, d/b/a Davis Distributing Company" filed for some type of relief under the provisions of the federal bankruptcy act.

In October of 1980 NBC Leasing sold and assigned its lease portfolio to Lease Northwest. On January 13, 1981, Lease Northwest negotiated a new agreement which allowed Thomas Davis to defer a portion of each monthly payment due Lease Northwest, and obligated him to pay interest at the rate of 16 percent per annum "from and after the due date of each deferred amount until paid." A representative of Lease Northwest testified that it would not have restructured Thomas Davis' debt without the signature of Margaret Davis as a continuing guarantor, even though Lease Northwest continued to hold a mortgage lien against real property and acquired a security interest in all of Thomas Davis' accounts receivable and general intangibles, and notwithstanding the fact that ownership of the equipment purchased from and leased back to the Davis company remained with either Lease Northwest or NBC Leasing. Lease Northwest was so insistent upon Margaret Davis' guaranty that it refused to apply to Thomas Davis' debt

two payments, totaling $8,715, until after May 7, 1981, when Margaret Davis signed an "Acknowledgement" to the January 13, 1981, agreement between it and Thomas Davis. The acknowledgment provides:

> The undersigned, respective Guarantors of all of the obligations of the Lessee under the terms of the Lease Agreements, hereby acknowledge the execution of the foregoing Agreement, and of the Master Lease, and agree that such execution shall not alter or affect their continuing guarantee of said obligations, and, in addition, said guarantee shall apply to all obligations of the Debtor [Thomas Davis doing business as Davis Distributing] set forth herein and in said Master Lease.

The principal amount due Lease Northwest from Thomas Davis under the provisions of the 1981 agreement is established to be $131,845.

After Lease Northwest rested, Margaret Davis attempted to prove certain conversations had between Thomas Davis and Fred Silman. At this point Lease Northwest moved in limine for an order prohibiting the introduction of any evidence relating to any agreement by Lease Northwest to collect the accounts receivable or repossess any property and demurred ore tenus to the mitigation of damages defense. The trial court sustained the motion and demurrer ore tenus and struck the mitigation of damages defense.

Thereafter, Margaret Davis, outside the presence of the jury, offered to prove that in the spring of 1982 Lease Northwest, through its employee, Fred Silman, instructed Thomas Davis not to attempt to collect any accounts receivable or take possession of the leased property, as Lease Northwest was a tough, experienced, and successful collector and would undertake those efforts. As a result, she understood that Lease Northwest would gather all of the leased equipment, collect all of the accounts receivable, and apply the proceeds to the debt, and, therefore, neither she nor Thomas Davis attempted to make any effort to recover any of the security. Thus, when the sublessees called Thomas Davis about their bills, he told them to wait until they heard from Lease Northwest. Lease Northwest in fact did nothing, and, as a consequence,

$166,366.27 worth of security was lost.

After objections to the foregoing offers were sustained, the trial court sustained Lease Northwest's motion for a directed verdict.

At a subsequent hearing the trial court awarded Lease Northwest "prejudgment interest from and after December 30, 1982 [the date Lease Northwest's petition was filed], at the statutory rate pursuant to Section 45-104, Revised Statutes of Nebraska, as amended."

In arguing the first issue, that the trial court erred in preventing her from adducing certain evidence, and the second issue, that the trial court erred in striking her mitigation of damages defense, Margaret Davis urges that even under an unconditional guaranty Lease Northwest would have had the ordinary contractual duty to mitigate its damages, but that, in any event, the original terms of the guaranty were modified such as to render it conditional and thus obligate Lease Northwest to mitigage its damages. She does not contend that she did not become a party to the 1974 guaranty or that the guaranty as written is other than unconditional.

Whatever may be the general contract mitigation of damages rule, it does not answer the question of whether the holder of an unconditional guaranty has a duty to realize on its security before seeking recovery from the guarantor. *Home Savings Bank v. Shallenberger*, 95 Neb. 593, 146 N.W. 993 (1914), *on appeal after remand* 82 Neb. 507, 118 N.W. 76 (1908), and *aff'd after retrial* 100 Neb. 113, 158 N.W. 455 (1916), presented a suit on an unconditional guaranty in connection with which the guarantee bank had permitted a lien on cattle securing the loan to expire, thus destroying the guarantor's subrogation rights. In remanding the cause for a new trial, the *Shallenberger* court stated that the trial court erred in failing to instruct the jury that the bank's negligence or failure to collect on its security was not a defense available to the guarantor. *First State Bank v. Peterson*, 205 Neb. 814, 290 N.W.2d 634 (1980), held that notwithstanding the provisions of Neb. U.C.C. § 9-504(3) (Reissue 1980), the failure to notify the guarantor of the sale of collateral was not a defense to the suit on the guaranty. In reaching its decision the *Peterson* court relied both on the

*Shallenberger* rule and on the fact that no security was contemplated or taken at the time the unconditional guaranty was given. Thus, a guarantee who holds an unconditional guaranty has no obligation to proceed against the security prior to seeking recovery under the guaranty contract. Margaret Davis' citations to conditional guaranty cases are inapposite, as is her citation to Neb. U.C.C. § 9-502(2) (Reissue 1980), for her liability is not based on Lease Northwest's security interest in any property.

However, this court discharged an unconditional guarantor to the extent she was damaged by her reliance on statements made by the guarantee after the guaranty contract came into existence. *McAllister v. Pitts*, 58 Neb. 424, 78 N.W. 711 (1899).

Lease Northwest argues, however, that the modification of a guaranty is an affirmative defense. Such a defense must be specifically pled to be considered. *Columbus Bank & Trust Co. v. High Country Stable*, 202 Neb. 724, 277 N.W.2d 81 (1979); *Kansas-Nebraska Nat. Gas Co., Inc. v. Hawkeye-Security Ins. Co.*, 195 Neb. 658, 240 N.W.2d 28 (1976). Thus, the questions become whether the modification of a guaranty is an affirmative defense and, if so, whether the allegations of Margaret Davis' answer plead the defense.

*Columbus Bank & Trust Co. v. High Country Stable, supra*, suggests that matters which would controvert the plaintiff's allegations of the amount due under a promissory note and guaranty are affirmative defenses. More specifically, it has been said that matters which seek to avoid a valid contract are affirmative defenses. *Honey v. Barnes Hosp.*, 708 S.W.2d 686 (Mo. App. 1986).

Thus, the modification of a guaranty of such a nature as would substantially change the liability of the parties, as is the situation claimed in the present case, is an affirmative defense which must be pled.

Margaret Davis argues that the allegations of her answer, particularly when coupled with the pretrial notes permitting her to depose Fred Silman, plead a modification defense with sufficient adequacy to survive the challenges presented by Lease Northwest's demurrer ore tenus and motion in limine.

In so arguing, she relies on *Newman Grove Creamery Co. v.*

*Deaver*, 208 Neb. 178, 302 N.W.2d 697 (1981), a suit on a promissory note in which the answer alleged duress as a defense. After the plaintiff therein rested, it demurred ore tenus to defendants' answer on the ground it alleged no facts to support the conclusion that duress had been present in the execution of the note. In overruling the sustainment of that demurrer, this court recognized a demurrer ore tenus as an objection to the receipt of evidence, but concluded that the defect in the answer did not prejudice the plaintiff. In its discussion the court noted that the pretrial order required that motions be filed 10 days before trial and observed that pretrial conferences are held to simplify the issues and that, to avoid traps and surprises, counsel cannot sit idly by and then for the first time interpose objections at trial. Notwithstanding those reflections, however, the *Newman Grove* court expressed doubt that the pretrial order covered a demurrer ore tenus. Thus, the court's decision rested on the fact that while the defendants pled no facts, their answer nonetheless put plaintiff on notice that duress was an issue and therefore fulfilled its purpose as a pleading: to frame and limit the issues upon which a cause is to be tried. *Circle 76 Fertilizer v. Nelsen*, 219 Neb. 661, 365 N.W.2d 460 (1985).

Thus, the controlling inquiry is whether it can reasonably be said that alleging a negligent or wrongful failure on the part of Lease Northwest to collect accounts receivable and protect its other security interests pleads a modification of the guaranty. It cannot be so said, even taking into account that the timing of the objection to the modification evidence requires that Margaret Davis' answer be liberally construed. *Newman Grove Creamery Co. v. Deaver, supra.* There is nothing in her answer which suggests that Margaret Davis claims the original terms of the guaranty were altered by any statements made by Lease Northwest after the guaranty came into existence. The allegations relate to Lease Northwest's perceived but nonexistent contractual duty to mitigate its damages by first recovering from its security. The fact that Margaret Davis was granted permission to depose Fred Silman, from whom no deposition was offered, does not alter that fact, whatever it might have been assumed he would say.

The crucial distinction between *Newman Grove* and the present case is that in the former the duress defense was pled, although improperly so by conclusion rather than by facts. *Moore v. Puget Sound Plywood*, 214 Neb. 14, 332 N.W.2d 212 (1983). In the present case the answer makes no reference whatsoever to the modification defense. The failure of the *Newman Grove* plaintiff to move for a more definite and certain statement of the defense waived its right to later object to the reception of evidence relevant to the duress issue. There can, however, be no waiver of the right to object to evidence relevant to a defense not pled in any form.

We must therefore conclude that the trial court correctly sustained Lease Northwest's demurrer ore tenus and motion in limine and properly struck Margaret Davis' mitigation of damages defense. The first and second issues must therefore be resolved adversely to Margaret Davis.

That being so, reasonable minds could draw but one conclusion from the evidence, that Lease Northwest was entitled to recover, and the trial court thus properly resolved the controversy as a matter of law. *Vice v. Darm Corp., ante* p. 1, 395 N.W.2d 524 (1986).

In connection with the third and last issue, that the trial court erred in allowing prejudgment interest, Lease Northwest correctly points out that the question is properly one concerning contractual, not prejudgment, interest. Prejudgment interest is interest due, pursuant to statute, prior to the rendition of a judgment. In the case of a written instrument, it is allowed on liquidated claims pursuant to the provisions of Neb. Rev. Stat. § 45-104 (Reissue 1984). However, where the parties have contracted for the payment of a particular lawful rate of interest, such contract controls and the rate thus fixed is recoverable in accordance with the terms of the contract. *First Nat. Bank v. Bolzer*, 221 Neb. 415, 377 N.W.2d 533 (1985).

In the present case Thomas Davis obligated himself, under the 1981 agreement, to pay interest at the rate of 16 percent per annum. Margaret Davis, by guarantying Thomas Davis' debts, contractually obligated herself to pay the aforesaid lawful rate of interest. The trial court misperceived the issue and only

awarded interest at the rate of 12 percent from and after the filing of Lease Northwest's petition, rather than 16 percent in accordance with the terms of the agreement Margaret Davis guarantied. However, since Lease Northwest did not cross-appeal, the trial court's judgment is affirmed.

AFFIRMED.