FIRST NATIONAL BANK IN MORRILL, A NATIONAL ASSOCIATION, APPELLEE, V. UNION INSURANCE COMPANY, APPELLANT.

522 N.W.2d 168

Filed September 30, 1994.   No. S-93-343.

Robert G. Simmons, Jr., of Simmons, Olsen, Ediger & Selzer, P.C., for appellant.

Richard A. Douglas, of Nichols, Douglas, Kelly, and Meade, P.C., for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and BOSLAUGH, J., Retired.

FAHRNBRUCH, J.

The defendant, Union Insurance Company (Union), appeals

a district court order holding Union liable on a statutorily required motor vehicle dealer's bond which it had issued to Kizzier Chevrolet Company of Scottsbluff (Kizzier).

The Scotts Bluff County Court entered summary judgment in favor of the plaintiff, First National Bank in Morrill (FNB), and the district court affirmed.

Having found plain error, we reverse the judgment of the district court for Scotts Bluff County and remand the cause for further proceedings consistent with this opinion.

## STANDARD OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *LaBenz Trucking v. Snyder, ante* p. 468, 519 N.W.2d 259 (1994); *Barta v. Kindschuh, ante* p. 208, 518 N.W.2d 98 (1994). Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id.*

In this case, our review will be limited solely to the pleadings because FNB offered into evidence only two affidavits in support of its motion for summary judgment. Both of the affidavits were executed by Gary G. Steele, first vice president of FNB. It was error for the county court to base its decision on those affidavits because there was no showing that the affidavits were made upon Steele's personal knowledge of the facts set forth therein. See Neb. Rev. Stat. § 25-1334 (Reissue 1989) (requiring that affidavits supporting and opposing motions for summary judgment must be made on personal knowledge). We, therefore, decline to consider the affidavits.

## FACTS

Based on the pleadings of the parties and the appendages thereto, the facts of this case are as follows:

On July 6, 1988, Clark and Connie Morrill, husband and wife, gave a promissory note in the amount of $7,200 to FNB. That note provided for the Morrills to make 36 monthly

payments of $241.62, beginning August 15, 1988, for a total indebtedness of $8,698.32. FNB took a security interest in the Morrills' 1985 Ford pickup and perfected its security interest as a first lien on the vehicle's certificate of title.

On January 19, 1991, the Morrills entered into a purchase contract with Kizzier for a 1988 pickup and traded in their 1985 pickup. Kizzier gave the Morrills a trade allowance of $2,350 for the 1985 pickup, minus the outstanding balance on the FNB note. The purchase contract between Kizzier and the Morrills shows the "balance owed on trade" as $1,880. Kizzier claims that FNB had advised Kizzier that the lien could be released for $1,880. Kizzier remitted a check for that amount to FNB on January 21 and requested that the title to the 1985 pickup and release of the lien be sent to Kizzier.

Kizzier delivered the 1988 pickup to the Morrills, and the Morrills delivered the 1985 pickup to Kizzier. Kizzier began making repairs on the 1985 pickup. The pleadings reflect various values for those repairs, including "several hundred dollars" and "approximately $2,000."

Subsequently, FNB returned the $1,880 check to Kizzier with a letter dated February 4, which letter stated in part: "Please find enclosed a check to payoff [sic] Clark Morrill's pickup loan with us. We are returning it to you as we will not accept this as payment in full." FNB did not state the amount it *would* accept as payment in full and refused to provide Kizzier with the title to the 1985 pickup.

Kizzier, being unable to obtain title to the 1985 pickup, refused to provide the Morrills with the title to the 1988 pickup. The Morrills at some point returned the 1988 pickup to Kizzier because they could not license the vehicle without the title. However, Kizzier refused to return the 1985 pickup to the Morrills because it had not been reimbursed for the cost of repairs it had made to the 1985 pickup.

On May 13, 1991, FNB filed a lawsuit in the Scotts Bluff County Court against Union, an insurance/bonding company which had issued a motor vehicle dealer's bond to Kizzier pursuant to Neb. Rev. Stat. § 60-1419 (Reissue 1993). FNB sought indemnification as a lienholder, alleging that Kizzier had refused a demand that Kizzier release the 1985 pickup to FNB,

and that FNB had been damaged by the value of the pickup, i.e., $4,000, plus its expenses in attempting to "obtain possession" of the pickup from Kizzier.

On June 17, the Morrills filed bankruptcy proceedings in the U.S. Bankruptcy Court for the District of Nebraska. On July 24, the county court stayed the proceedings in its court pending resolution of the bankruptcy case.

After filing their bankruptcy proceedings, the Morrills claimed the 1985 pickup as an asset of the bankruptcy estate and demanded that Kizzier turn over the 1985 pickup to them or to the trustee. Kizzier resisted the application for a turnover order and claimed ownership of the vehicle. The bankruptcy court found the Morrills to be the owners of the 1985 pickup and ordered Kizzier "to turn over to the [Morrills] the 1985 vehicle *immediately upon receipt of the amount Kizzier claims to have expended for repair for that vehicle.*" (Emphasis supplied.) The record is silent as to any adjudication by the bankruptcy court of the Morrills' rights vis-a-vis FNB, nor is there any indication that Union was a party to the bankruptcy proceedings.

The stay was lifted and the bankruptcy closed on May 19, 1992. On May 29, FNB filed an amended petition in the Scotts Bluff County Court, and the case proceeded.

On June 10, Union demurred to the amended petition, claiming, inter alia, that FNB's petition did not state facts sufficient to constitute a cause of action. Union's demurrer was overruled on September 24. Union moved for summary judgment on September 25 and filed an answer to the amended petition on September 28.

On October 5, FNB filed a motion for summary judgment. At a hearing on the summary judgment motions of both parties, FNB entered two affidavits into evidence. Union joined in offering a memorandum opinion of the bankruptcy court which was attached to one of the affidavits offered by FNB, and offered no other controverting evidence. On December 18, the county court sustained FNB's summary judgment motion and overruled Union's. The court awarded FNB $5,755.89 plus costs of the action.

Union timely appealed to the district court. That court

affirmed the judgment of the county court in all respects. Union then appealed to the Nebraska Court of Appeals. The case was removed from the Court of Appeals to this court pursuant to our authority to regulate the caseloads of the appellate courts of this state.

## ASSIGNMENTS OF ERROR

Union has made numerous assignments of error. However, an appellate court may elect to consider plain error not assigned. See, Neb. Rev. Stat. § 25-1919 (Cum. Supp. 1992); *Lindsay Ins. Agency v. Mead*, 244 Neb. 645, 508 N.W.2d 820 (1993). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Dike v. Dike*, 245 Neb. 231, 512 N.W.2d 363 (1994); *Hoch v. Prokop*, 244 Neb. 443, 507 N.W.2d 626 (1993).

Because we determine that the trial court committed plain error requiring that this cause be remanded for further proceedings, it is not necessary for us to consider Union's formal assignments of error.

## ANALYSIS

We find that the trial court committed plain error in three respects: (1) its failure to sustain Union's demurrer to FNB's amended petition, (2) its entry of summary judgment in favor of FNB, and (3) its award to FNB based upon an incorrect measure of damages.

### DEMURRER

When considering a demurrer to a petition, a court must assume the pleaded facts, as opposed to legal conclusions, are true as alleged and must give the petition the benefit of any reasonable inference arising from the facts alleged; however, a court cannot assume the existence of a fact not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Schendt v. Dewey, ante* p. 573, 520 N.W.2d 541 (1994).

Because FNB has sued Union pursuant to § 60-1419, it is necessary to examine the provisions of that statute to determine the facts which FNB was required to plead in order to state a

cause of action.

Section 60-1419 requires a motor vehicle dealer to provide a corporate surety bond in the amount of $25,000 at the time of making application for licensure. Section 60-1419 also enumerates six specific situations in which a lienholder may recover on the surety bond, two of which FNB has relied upon in its lawsuit:

> The bond shall provide: . . . (2) that the licensed dealer will first fully indemnify any holder of a lien or security interest created pursuant to section 60-110 or article 9, Uniform Commercial Code, whichever applies, in the order of its priority . . . by reason of *any loss suffered* because of . . . (e) *any false and fraudulent representations* or deceitful practices whatever in representing any motor vehicle or trailer, and (f) the *dealer's failure to remit the proceeds* from the sale of any motor vehicle which is subject to a lien or security interest to the holder of such lien or security interest . . . .

(Emphasis supplied.)

For FNB to recover from Union on Kizzier's corporate surety bond pursuant to the above-cited subsections of § 60-1419, FNB must plead and prove that (1) FNB is the holder of a lien or security interest in the 1985 pickup created pursuant to Neb. Rev. Stat. § 60-110 (Reissue 1988) or article 9, Uniform Commercial Code; (2) FNB has suffered a loss; and (3) FNB's loss was because of either (a) Kizzier's false and fraudulent representations or deceitful practices in representing the 1985 pickup or (b) Kizzier's failure to remit to FNB the proceeds from the sale of the 1985 pickup.

In its amended petition, FNB alleged, inter alia, that it had a perfected first lien on the 1985 pickup; that Dwayne Kizzier had represented in an affidavit in the bankruptcy court that Kizzier was the owner of the 1985 pickup; that such representation was a false representation as set forth in § 60-1419(2)(e), was an act of conversion, and was a failure to remit proceeds in violation of § 60-1419(2)(f); and that as a result of Kizzier's failure to "return possession of the vehicle to the first lienholder" and Kizzier's "converting said vehicle," FNB was damaged in the amount of the value of the vehicle, i.e., $4,000.

A review of the pleadings reveals that the facts as pled by FNB are not sufficient to state a cause of action pursuant to § 60-1419. We are required to assume, as alleged in FNB's petition, that Dwayne Kizzier's statement in his affidavit in the bankruptcy court that Kizzier was the owner of the 1985 pickup constituted a false representation for the purposes of § 60-1419(2)(e). However, a false representation, standing alone, is insufficient to justify recovery by a lienholder under § 60-1419. The lienholder must also show that its loss is *proximately caused by* the false representation.

It is unascertainable from FNB's amended petition exactly how any "false representation" by Dwayne Kizzier in the bankruptcy court caused FNB to suffer a loss. In fact, we cannot discern how FNB would have been in any better position had Dwayne Kizzier *admitted* in the bankruptcy court that the Morrills owned the vehicle, in view of the bankruptcy court's finding that the Morrills owned the vehicle in any event. In the absence of a pleading by FNB that Kizzier's allegedly false representation in the bankruptcy court was the proximate cause of a loss to FNB on its lien, FNB has failed to state a cause of action under the provisions of § 60-1419(2)(e).

Furthermore, FNB has failed to state a cause of action under § 60-1419(2)(f) for failure of Kizzier to remit to FNB the proceeds of a "sale" of the 1985 pickup, because FNB has failed to plead the existence of any proceeds.

FNB also alleged that Kizzier's actions constitute a conversion of the vehicle. To the extent that this allegation differs from FNB's allegation that Dwayne Kizzier falsely represented Kizzier's ownership of the pickup, § 60-1419(2) provides no further relief to a lienholder for a conversion of a vehicle, and FNB therefore has no cause of action based upon conversion.

Because FNB has failed to plead facts to bring itself within the provisions of the motor vehicle dealer's bond statute, it has failed to state a cause of action, and it was plain error for the county court to overrule Union's demurrer to FNB's amended petition. Upon remand, FNB must be given an opportunity to file an amended petition in the county court if it so desires.

Our finding of plain error in the trial court's overruling of

Union's demurrer is dispositive of this appeal. However, because we are remanding the cause for further proceedings, we elect to address other plain error committed by the county court.

### Summary Judgment

Next, we find that even if FNB's amended petition had been able to withstand Union's demurrer, FNB was not entitled to summary judgment. Our review of the pleadings shows that there are genuine issues of material fact which make summary judgment inappropriate in this case.

FNB alleged in its amended petition that Kizzier was in violation of its bond, while Union affirmatively alleged in its answer that Kizzier had complied with all of the requirements of the bond as described in § 60-1419, and specifically denied that Kizzier had made any false representations as to any motor vehicle. FNB also alleged that it was damaged in the amount of $4,000, the value of the 1985 pickup, all of which Union generally denied.

Whether Kizzier complied with the provisions of the bond and whether FNB was damaged and in what amount are all genuine issues of material fact which are raised by the pleadings, and which are sufficient to preclude summary judgment in favor of FNB.

### Measure of Damages

Finally, we find that even if it had been proper to order summary judgment in favor of FNB, which we hold it was not, the pleadings reflect no basis in law for the county court to award the amount of damages granted to FNB. The journal entry of the county court sustaining FNB's motion for summary judgment simply awarded FNB $5,755.89 plus the costs of the action. This amount apparently represents an award of $4,000 for the value of the vehicle plus an award of $1,755.89 for attorney fees, and is so treated by both parties in their briefs.

The amount which an aggrieved lienholder may recover on a motor vehicle dealer's bond is the balance remaining on the secured loan, not to exceed the statutory limit of the bond. See, § 60-1419; *Havelock Bank v. Western Surety Co.*, 217 Neb.

560, 352 N.W.2d 855 (1984); *Sun Ins. Co. v. Aetna Ins. Co.*, 169 Neb. 94, 98 N.W.2d 692 (1959). FNB merely alleges in its amended petition that it had been damaged "by the value of the vehicle, to-wit, $4,000.00."

The value of the vehicle is not relevant to the correct measure of FNB's damages. Only *the remaining balance on the Morrills' promissory note which was secured by the 1985 pickup* is relevant in determining FNB's alleged damages. Because FNB has failed to plead or prove the remaining balance on the Morrill's July 6, 1988, promissory note secured by the 1985 pickup, it has failed to either plead or prove the value of its lien. Therefore, there exists no legal basis for an award of damages to FNB in any amount by way of summary judgment. It was plain error for the trial court to award FNB damages based upon the value of the vehicle and to award attorney fees to FNB.

## ATTORNEY FEES

Both FNB and Union have moved this court for attorney fees. The rule in this state is that attorney fees and expenses may be recovered only where provided for by statute, or where the uniform course of procedure has been to allow such a recovery. *Henry v. Rockey, ante* p. 398, 518 N.W.2d 658 (1994). FNB requests attorney fees pursuant to Neb. Rev. Stat. § 44-359 (Reissue 1993), which provides for an award of fees in actions upon insurance policies. However, at this time, as a nonprevailing party, FNB is not entitled to attorney fees, and its motion is overruled. See, § 44-359; Neb. Rev. Stat. § 25-1708 (Reissue 1989).

Union has moved for attorney fees pursuant to Neb. Rev. Stat. § 25-824 (Reissue 1989) on the basis that the proceeding undertaken by FNB is frivolous. We have previously stated that "frivolous," for the purposes of § 25-824, is defined as being a legal position wholly without merit, that is, without rational argument based on law and evidence to support a litigant's position in the lawsuit. *Nebraska Pub. Emp. v. City of Omaha*, 244 Neb. 328, 506 N.W.2d 686 (1993); *Sports Courts of Omaha v. Meginnis*, 242 Neb. 768, 497 N.W.2d 38 (1993).

Because a lienholder is entitled to recover upon a motor

vehicle dealer's bond in certain situations, FNB's legal position is not "wholly without merit." There is, therefore, no basis at this time for an award of attorney fees pursuant to § 25-824, and Union's motion is overruled.

## CONCLUSION

Having found plain error in the county court proceedings, we reverse the summary judgment in favor of FNB and remand the cause to the district court for Scotts Bluff County with direction to remand the cause to the county court with direction to vacate its summary judgment, to sustain Union's demurrer to FNB's amended petition, and to conduct further proceedings consistent with this opinion. The motions of both parties for attorney fees are overruled.

REVERSED AND REMANDED WITH DIRECTIONS.

WRIGHT, J., participating on briefs.