BRYAN SURRATT, APPELLANT AND CROSS–APPELLEE, V. WATTS TRUCKING AND AETNA CASUALTY INSURANCE CO., ITS WORKERS' COMPENSATION INSURANCE CARRIER, APPELLEES AND CROSS–APPELLANTS.

541 N.W.2d 41

Filed December 22, 1995.   No. S–95–441.

James E. Harris and Timothy K. Kelso, of Harris, Feldman, Stumpf Law Offices, for appellant.

Patrick B. Donahue, of Cassem, Tierney, Adams, Gotch & Douglas, for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

In undertaking this appeal from the award of the Nebraska Workers' Compensation Court to the Nebraska Court of Appeals, the plaintiff–appellant and cross–appellee, the employee Bryan Surratt, claimed, in summary, that the compensation court's award against the defendants–appellees and cross–appellants, the employer Watts Trucking and its compensation insurance carrier, Aetna Casualty Insurance Co., was inadequate. More specifically, Surratt asserted that by misevaluating the evidence, the compensation court erroneously denied him permanent disability benefits. Watts and Aetna

claimed that as Surratt's appeal is frivolous, they are entitled to the award of an attorney fee as a sanction against Surratt, and cross–appealed, asserting that in view of its rules relating to the disclosure of evidence, the compensation court erred in certain of its evidentiary rulings. In reply, Surratt asserted that the compensation court rules upon which Watts relies are unconstitutional. Surratt thereafter successfully petitioned to bypass the Court of Appeals, as a consequence of which this court considers the appeal and cross–appeal in the first instance. We affirm the award of the compensation court.

Surratt was involved in an accident arising out of and in the course of his employment as a refuse hauler for Watts when, on October 8, 1993, the truck he was driving struck a barrel. Surratt did not recall feeling the impact, nor did he feel any pain immediately upon impact. However, upon getting out of the truck, he felt a sharp pain that went through his leg and up through his back, and he fell to the ground.

Shortly after Surratt's accident, he was treated by Dr. Angelo Patil of the University of Nebraska Medical Center. Neither Patil nor any of the other treating physicians at the medical center expressed any opinions that Surratt suffers from a permanent disability. Dr. Lonnie Mercier, an orthopedic surgeon, examined plaintiff on January 14, 1994, and concluded that Surratt would not have any permanency rating. However, Dr. Jay J. Parsow, who also treated Surratt, opined that Surratt had suffered permanency attributable to the accident because a disk tear was reported on the MRI scan indicative of an acute injury.

Although restricted to light–duty tasks, Surratt attempted to return to work in December 1993, at which time he was sent to a compost pile where yard waste was kept. He was required to pick up plastic bags that were blowing around. Because of back discomfort, Surratt was unable to perform this work.

After a "work–hardening" program, Surratt again attempted to return to work in February 1994. There is conflicting testimony as to what Surratt did after returning to work the second time and how he came to be discharged, but there is no question that his employment with Watts was terminated.

Not until the original hearing held by the compensation court

on August 3, 1994, were Watts and Aetna furnished with a copy of Parsow's opinion; Watts and Aetna objected to its admission into evidence on a variety of grounds, including its untimely disclosure. Surratt claimed that it was offered solely in rebuttal to the deposition of Mercier. Apparently, Mercier's deposition was taken on June 30, 1994, but was not transcribed and delivered to the parties until July 29. Surratt took the position that because the deposition transcription was not available until July 29, pursuant to the relevant compensation court rule, he had 10 days from that date in which to disclose rebuttal evidence, a timespan which encompassed the hearing date. The compensation court overruled Watts and Aetna's objection.

The compensation court also received in evidence a report prepared by Midlands Rehabilitation Consultants regarding Surratt's vocational abilities and earning capacity. Watts and Aetna unsuccessfully objected on the basis that the report was not prepared in accordance with the compensation court rules because Watts and Aetna did not agree to the Midlands evaluation, nor was Midlands appointed by the compensation court.

Surratt's position that the award is inadequate is premised on the claim that as Mercier's opinion did not take into account the revelations of the MRI scan, his opinion cannot be relied upon and has no probative force. But Mercier did take the MRI scan revelations into account, for he testified:

Q. Doctor, do you have an opinion with a reasonable degree of medical certainty as to whether or not . . . Surratt has suffered any permanent injury or impairment as a result of the automobile accident of October 8th, 1993?

A. Yes, I have an opinion.

Q. And what is your opinion?

A. I do not believe . . . Surratt would have any permanency contributable [sic] to this condition.

Q. Doctor, what are the reasons or basis of that opinion?

A. A lack of evidence of any serious injury having occurred.

Q. And what specifically are you referring to?

A. Essentially normal objective physical exam, and essentially relatively normal MRI studies and other evaluations.

Nevertheless, Surratt points to Parsow's report, which read the MRI scan differently, concluding that the scan revealed a disk tear indicative of an acute injury. However, even assuming that Parsow's report was properly in evidence and contained proper rebuttal testimony, Neb. Rev. Stat. § 48-185 (Reissue 1993) precludes an appellate court from substituting its view of the facts for that of the compensation court if the record contains evidence to substantiate the factual conclusions reached by the compensation court. *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994).

It is not the proper function of an appellate court to determine on review whether a disk tear is apparent from an MRI and whether this constitutes a permanent injury; that is the reason expert witnesses are called to testify before a factfinding court. It was for the compensation court to determine which, if any, of the expert witnesses to believe. See, *Brandt v. Leon Plastics, Inc.*, 240 Neb. 517, 483 N.W.2d 523 (1992); *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991); *Mulder v. Minnesota Mining & Mfg. Co.*, 219 Neb. 241, 361 N.W.2d 572 (1985). The compensation court decided to believe Mercier, and this decision cannot be said to have been erroneous as a matter of law.

That determination makes it unnecessary for us to concern ourselves with Watts and Aetna's claim that the compensation court erred in receiving in evidence the reports of Parsow and Midlands or with Surratt's claim that the rules on which Watts and Aetna rely in making those claims are unconstitutional.

All that remains, then, is the claim made by Watts and Aetna that as Surratt's appeal was frivolous, they are entitled to an award of attorney fees as a sanction. The general rule is that an attorney fee may be recovered only when authorized by statute or when a recognized and accepted uniform course of procedure allows recovery of such. *First Nat. Bank in Morrill v. Union Ins. Co.*, 246 Neb. 636, 522 N.W.2d 168 (1994); *Nebraska Pub. Emp. v. City of Omaha*, 244 Neb. 328, 506 N.W.2d 686 (1993). Neb. Rev. Stat. § 25-824(2) (Reissue 1989) provides:

Except as provided in subsections (5) and (6) of this section, in any civil action commenced or appealed in any court of record in this state, the court shall award as part of its judgment and in addition to any other costs otherwise assessed reasonable attorney's fees and court costs against any attorney or party who has brought or defended a civil action that alleges a claim or defense which a court determines is frivolous or made in bad faith.

As used in that statute, "frivolous" means a legal position wholly without merit, that is, without rational argument based on law and evidence to support a litigant's position in the lawsuit. *First Nat. Bank in Morrill, supra*; *Nebraska Pub. Emp., supra*. Any doubt whether a legal position is frivolous or taken in bad faith should be resolved in favor of the one whose legal position is in question. *Nebraska Pub. Emp., supra*; *Sports Courts of Omaha v. Meginnis*, 242 Neb. 768, 497 N.W.2d 38 (1993).

While Surratt's appeal is meritless, we are not prepared to say that it was wholly without rational argument based on law and the evidence. Surratt relied on a line of decisions holding that the value of an expert's opinion is no stronger than the facts upon which it is based and that because the MRI indicated a disk tear, Mercier's opinions had no probative force.

Accordingly, we deny Watts and Aetna an attorney fee and affirm the award of the compensation court.

AFFIRMED.

CAPORALE, J., dissenting in part.

While I agree with the majority's disposition of the appeal filed by the employee, Bryan Surratt, and with its conclusion that the evidential issues raised by the employer, Watts Trucking, and its carrier, Aetna Casualty Insurance Co., on cross-appeal need not be addressed, I disagree with its determination that Surratt's appeal was not frivolous as that term is used in Neb. Rev. Stat. § 25-824(2) (Reissue 1989).

No matter how one attempts to disguise Surratt's operative assignment of error, it is nothing more than a claim that the compensation court erred in believing one expert rather than another. As the majority opinion itself establishes, the proposition that the compensation court is not required to take

an expert's opinion as binding and may accept or reject such an opinion is so well established that to argue otherwise can only be described as legally absurd.

While I certainly would not want to adopt a judicial policy which would chill the litigation of new propositions of law ultimately ruled to be meritless, or chill efforts to apply old propositions to newly developing factual patterns, I do think we owe litigants a judicial policy which discourages the relitigation of propositions which have repeatedly been held to be meritless in well-established contexts. Only under such a judicial policy can there ever be any hope of once again achieving some semblance of currency in the work of the courts.

Accordingly, I would order Surratt's attorneys to pay the employer and its carrier jointly the sum of $1,500 to apply toward the services of their attorneys in this court.